IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| PHILLIPS 66 COMPANY, | § § § | |
| Plaintiff, | § § | CIVIL ACTION NO. 4:21-cv-00279 |
| v. | § § | |
| RAAJ UNOCAL LUBRICANTS LIMITED, | § § § | |
| Defendant. | § | |

**<u>PLAINTIFF'S MOTION FOR ALTERNATIVE SERVICE</u>**

Phillips 66 contacted Raaj and its Indian intellectual property counsel via email on January 29, 2021 (a day after filing suit), notifying them of the suit and asking whether they would agree to waive service. Rather than respond in good faith to Phillips 66's communications, Raaj instead filed suit against Phillips 66 in India *and attached Phillips 66's complaint in this case to its own suit in India*. Raaj also successfully applied for an *ex parte* order from the Indian court restraining Phillips 66 from proceeding in this case. After multiple hearings in the Indian suit in which Raaj repeatedly referenced Phillips 66's claims in this case, the Indian Court dissolved the temporary restraining order on May 25, 2021, acknowledging that it would not be justified to restrain Phillips 66 from prosecuting this suit. Despite this, Raaj never responded to Phillips 66's request regarding waiver of service. Further, Phillips 66 has been informed that service via the Hague Convention, which Phillips 66 initiated in good faith on March 1, will take at least eight to twelve months, if not longer.

Accordingly, Phillips 66 now requests it be allowed to serve Raaj via email. The Federal Rules permit electronic service, and nothing in the Hague Convention or other agreements prohibits it. Particularly where, as here, the foreign party has actual notice and service via the Convention would

1

cause undue delay as well as exacerbate the irreparable injury to Phillips 66 caused by Raaj's ongoing infringement, email service is warranted. Phillips 66's motion should be granted.

## BACKGROUND

Raaj is an India-based business entity that deals in oils, lubricants, and related products used for engines and other industrial applications. ECF No. 1 ¶¶ 26-27 & Ex. C. Phillips 66 filed the instant suit against Raaj on January 28, 2021, asserting federal and state claims for trademark infringement, counterfeiting, unfair competition, dilution, and unjust enrichment relating to Raaj's use of Phillips 66's trademarks in the United States. *See generally id.*

One day after filing the instant suit, Phillips 66's counsel emailed Raaj and Raaj's intellectual property counsel in India to notify them of the suit and ask whether Raaj would be willing to agree to formally waive service of the Complaint. *See* Dkt. 8, Exhibit 1, Decl. of Manus Upmanyu ¶ 3 ("Upmanyu Decl."). Raaj ignored counsel's initial email, so counsel followed up with a second email on February 8. *Id.* at ¶ 4. Raaj proceeded to ignore that email as well. *Id.* at ¶ 5.

Phillips 66 then initiated service through the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("the Hague Convention"), retaining a process server that specializes in serving foreign parties, including through the procedures required under the Hague Convention. *See generally* Dkt. 8, Exhibit 2, Decl. of Celeste Ingalls ("Ingalls Decl."). India's central authority authorized to receive and effect service under the Hague Convention received Phillips 66's complaint and summons on March 1, 2021. *Id.*

Phillips 66's process server testified that India's central authority currently takes an average of eight to twelve months before completing service. *Id.* The process server further testified "at this time an estimate of how long . . . service will actually take cannot currently be calculated" due to

delays caused by the ongoing covid pandemic. *Id.* The Hague Convention does not require member-countries to provide status on a request for service, and India does not offer status reports. *Id.*

Rather than respond to Phillips 66's emails regarding service, Raaj filed suit against Phillips 66 in India on February 25, 2021 and successfully applied for the aforementioned *ex parte* order on March 8, 2021 approximately four to five weeks after Phillips 66's counsel first contacted Raaj. Upmanyu Decl. ¶ 6. On March 10, Raaj served its suit on Phillips 66 by emailing Phillips 66's counsel representing it before the Indian Trade Marks Registry, as permitted by the *ex parte* order dated 8 March 2021 of the Indian court. *Id.* at ¶ 7. A copy of Raaj's filing shows that Raaj attached Phillips 66's complaint to Raaj's suit in the Indian action. *Id.* at ¶ 6. The Indian court granted Raaj's request for an *ex parte* temporary restraining order prohibiting Phillips 66 from proceeding with this action. *Id.* Phillips 66's counsel in India responded to Raaj's suit, and the Indian court held hearings over multiple days. Exhibit 3, Declaration of Shwetasree Majumder ("Majumder Decl."), ¶ 3. In those hearings and accompanying briefing, counsel for Raaj argued for maintaining the order restraining Phillips 66 from proceeding in this case, repeatedly citing the complaint in this case and the relief sought by Phillips 66 in this lawsuit. *Id.* at ¶ 4. The Indian court ultimately dissolved the restraining order on May 25, 2021. *Id.* at ¶ 5.

**ARGUMENT**

Rule 4(f) contains several options a party may utilize to effect service upon a foreign party. For example, Rule 4(f)(1) allows service through any applicable international agreement, such as the Hague Convention. *See* FED. R. CIV. P. 4(f)(1). Separately, however, Rule 4(f) authorizes court-ordered service of a foreign party by any "other means not prohibited by international agreement." FED R. CIV. P. 4(f)(3). "[T]here is no requirement that a party first exhaust the methods of service contemplated by Rules 4(f)(1) and 4(f)(2) before requesting alternative service under Rule 4(f)(3)."

3

*Hazim v. Schiel & Denver Book Grp.*, No. 12-CV-1286, 2012 WL 12894747, at *1 (S.D. Tex. July 18, 2012). That means parties need not rely on the Hague Convention to complete service upon a foreign party, as the Convention "does not displace Rule 4(f)(3)." *Nagravision SA v. Gotech Int'l Tech. Ltd.*, 882 F.3d 494, 498 (5th Cir. 2018). Granting relief under Rule 4(f)(3) "is a question committed to the sound discretion of the district court." *Hazim*, 2012 WL 12894747, at *1.

Courts interpret Rule 4(f)(3) as effectively requiring a two-step analysis: (1) whether the proposed means are prohibited by any international agreement; and (2) whether an exercise of the court's discretion is warranted. Because electronic service is not prohibited under any agreement (including the Hague Convention) and the facts here establish that court intervention is necessary, the Court should grant Phillips 66's motion and allow Raaj to be served via an email to its counsel.

    **A.**    **Electronic Service on Indian parties is allowed under the Federal Rules and not prohibited under any international agreement, including the Hague Convention.**

The Federal Rules explicitly permit electronic service in a variety of circumstances. *See, e.g.*, FED. R. CIV. P. 5(b)(2)(E); *see also Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1018 n. 6 (9th Cir. 2002) ("[T]rial courts have authorized a wide variety of alternative methods of service including publication, ordinary mail, mail to the defendant's last known address, delivery to the defendant's attorney, telex, and most recently, email."). The Hague Convention, on the other hand, is silent as to electronic service. *See Gamboa v. Ford Motor Co.*, 414 F. Supp. 3d 1035, 1042 (E.D. Mich. 2019). As a result, electronic service does not run afoul of the Convention. *See id.*

Adopted in 1965, the Convention's current provisions were "intended to provide a simpler way to serve process abroad, to assure that defendants sued in foreign jurisdictions would receive actual and timely notice of suit, and to facilitate proof of service abroad." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 698 (1988). Service under the Convention's procedures occurs through "a central authority [that] receive[s] requests for service of documents from other

4

countries." *Id.* Article 10 of the Convention also allows service via "postal channels," but countries who objected to Article 10 (as India did) may require that service occur solely via its central authority. *See* HAGUE CONVENTION art. 10, Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638; Ingalls Decl. ¶ 7.

Objections to Article 10, however, are of no import here. While district courts historically split on whether a country's objection to service via "postal channels" meant service via electronic communications was prohibited by the Convention, "a strong majority have concluded that a country's objection to Article 10 does not equate to an objection to email service."[1] These courts reason that an Article 10 objection "is specifically limited to the enumerated means of service in Article 10, which do not include service by email." *E.g.*, *Automobili Lamborghini S.p.A. v. Garcia*, 467 F. Supp. 3d 385, 400 (E.D. Va. 2020). So despite a country's objection to service via "postal channels" a court "remains free to order alternative means of service where a signatory nation has not *expressly* objected to those means." *Karsten Mfg. Corp. v. Store*, No. 18-CV-61624, 2018 WL 8060707, at *1 (S.D. Fla. July 26, 2018) (emphasis added).

The majority consensus among district courts that electronic service is not barred by a country's objection to Article 10 rests on sound foundation. As many courts have reasoned, electronic communications differ in material ways from traditional mail and are often more reliable. *See, e.g.*, *Anova Applied Elecs., Inc. v. Hong King Grp., Ltd.*, 334 F.R.D. 465, 471 (D. Mass. 2020); *Sulzer Mixpac AG v. Medenstar Indus. Co.*, 312 F.R.D. 329, 332 (S.D.N.Y. 2015). In addition, the routine

---

[1] *Patrick's Rest., LLC v. Singh*, No. 18-CV-00764, 2019 WL 121250, at *3 (D. Minn. Jan. 7, 2019) (collecting cases); *accord, e.g.*, *The Neck Hammock, Inc v. Danezen.com*, No. 2:20-CV-287, 2020 WL 6364598, at *4 (D. Utah Oct. 29, 2020) ("Although courts are split on the issue, the majority have concluded that a country's objection to Article 10(a) does not equate to an objection to email service."); *WeWork Companies Inc. v. WePlus (Shanghai) Tech. Co.*, No. 18-CV-04543, 2019 WL 8810350, at *2 (N.D. Cal. Jan. 10, 2019) (noting majority position allowing email service and holding that "given the weight of authority, the court finds that China's objection to Article 10 regarding postal service does not mean that email service is prohibited by international agreement").

5

use of electronic communications had not yet occurred in 1965 when the Convention's provisions were adopted. Given the advantages of electronic service, "a country that objected to the weaknesses associated with service by traditional mail would not necessarily object to service by email." *The Neck Hammock*, 2020 WL 6364598, at *4; *accord Water Splash, Inc. v. Menon*, 137 S. Ct. 1504, 1507 (2017) (holding the Convention preempts only "inconsistent methods of service").

    Courts that reach the opposite conclusion improperly extrapolate from a country's decision about a separate method of service from more than fifty years ago. Respectfully, those decisions are erroneous, and applying them would be particularly odd here. The Indian court itself allowed electronic service, which is precisely how Raaj served its complaint for the Indian suit on Phillips 66. *See* Upmanyu Decl. ¶ 7. Moreover, the United States routinely seeks (and is granted) leave to serve foreign parties electronically, *including those located in India*.[2] That means courts which conflate an objection to "postal channels" with an objection to electronic service are interpreting the Convention's terms contrary to the United States' interpretation of its own agreement.

    Accordingly, there is no prohibition in the Hague Convention against authorizing electronic service for Raaj, which the Federal Rules already allow. The only question is whether Court should exercise its discretion under Rule 4(f)(3), and as explained next, the facts establish the answer is yes.

---

[2] *See, e.g.*, *Fed. Trade Comm'n v. Repair All PC, LLC*, No. 17-CV-869, 2017 WL 2362946, at *4, 5 (N.D. Ohio May 31, 2017) (alternative service on Indian defendants via email did not "run[] afoul of the Hague Convention"); *United States v. Besneli*, No. 14-CV-7339, 2015 WL 4755533, at *2 (S.D.N.Y. Aug. 12, 2015) (noting Government's acknowledgment of split on the issue and granting Government's motion for alternative service via email on party located in Turkey despite Turkey's Article 10 objection); *FTC v. PCCare247 Inc.*, No. 12-CV-7189, 2013 WL 841037, at *3 (S.D.N.Y. Mar. 7, 2013) (allowing service of Indian defendants through email and Facebook).

### B. The court should exercise its discretion under Rule 4(f)(3).

Aside from the requirement that any court-ordered method of service must not be prohibited an international agreement, Rule 4 does not explain how or when courts should exercise their discretion and allow alternative service. As stated, there is no provision in Rule 4(f) requiring a party to exhaust or even attempt other avenues of service (including the Convention's procedures). Some courts nevertheless "require a showing by the plaintiff that reasonable efforts to serve the defendant [via the Convention] have already been made and that the court's intervention will avoid further unduly burdensome or futile attempts at service." *Hazim*, 2012 WL 12894747, at *1; *see also James Avery Craftsman, Inc. v. Sam Moon Trading Enterprises, Ltd.*, No. 16-CV-00463, 2018 WL 4688778, at *6 (W.D. Tex. July 5, 2018) (collecting cases that allowed alternative service in part because the movant had already made efforts to comply with the Convention's procedures).

Other courts, however, do not necessarily require parties to attempt service through the Convention if other evidence shows use of the Convention's procedures would be "futile" or "impracticable." *Gamboa*, 414 F. Supp. 3d at 1040; *In re Takata Airbag Prod. Liab. Litig.*, No. 15-MD-02599, 2017 WL 8809362, at *4 (S.D. Fla. Mar. 24, 2017). Many of these cases are influenced by the Advisory Committee's 1993 notes to Rule 4, which discuss "special method[s] of service" in "cases of urgency." The Advisory Committee states:

> [Rule 4(f)(3)] authorizes the court to approve other methods of service not prohibited by international agreements. The Hague Convention, for example, authorizes special forms of service in cases of urgency if convention methods will not permit service within the time required by the circumstances. Other circumstances that might justify the use of additional methods include the failure of the foreign country's Central Authority to effect service within the six-month period provided by the Convention, or the refusal of the Central Authority to serve a complaint seeking punitive damages or to enforce the antitrust laws of the United States. In such cases, the court may direct a special method of service not explicitly authorized by international agreement if not prohibited by the agreement.

FED. R. CIV. P. 4, advisory committee's note to 1993 amendment. In *Gamboa*, the court concluded reliance on the Convention was futile in part because Germany's central authority was known to refuse service of complaints featuring the legal question at issue. *See* 414 F. Supp. 3d at 1040-41.

That said, the court in *Gamboa* also cited translation costs associated with the Convention's procedures and a delay of "a couple months" to complete service under the Convention in justifying its allowance of alternative electronic service. *See id.* Other courts allowing alternative service have relied on similar concerns.[3] Another common theme in decisions allowing alternative electronic service is the foreign party already has actual knowledge of the suit. *See, e.g.*, *Document Operations LLC v. AOS Legal Techs.*, No. 20-CV-1532, 2020 WL 6685488, at *3 (S.D. Tex. Nov. 12, 2020) (allowing electronic service was "especially persuasive in light of AOS's knowledge of this lawsuit, its responsibilities as a party to this action, its prior conduct, as noted above, of thwarting service on possible culpable domestic corporate defendants, and its counsel's refusal to even speak to the Court by telephone regarding service on AOS.").[4] Sufficient urgency may also arise where a party seeks to prevent "unjust gamesmanship and forum shopping." *Nanya Tech. Corp. v. Fujitsu Ltd.*, No. 06-CV-00025, 2007 WL 269087, at *5 (D. Guam Jan. 26, 2007). At bottom, then, the case law establishes that Rule 4(f)(3) "permits service in a particular case to be tailored to the necessities of the situation

---

[3] *Haffner Int'l Mktg. Grp., Inc. v. Sahin*, No. 13-CV-0459, 2013 WL 5954379, at *2 (D. Nev. Nov. 5, 2013) (alternative electronic service justified based on the costs associated with hiring foreign counsel and a "one or two" month delay to complete the Convention's process); *Richmond Techs., Inc. v. Aumtech Bus. Sols.*, No. 11-CV-02460, 2011 WL 2607158, at *13 (N.D. Cal. July 1, 2011) (reasoning alternative process was necessary because the Convention's procedures could take six to eight months to complete).

[4] *See also WorldVentures Holdings, LLC v. Mavie*, No. 18-CV-393, 2018 WL 6523306, at *14 (E.D. Tex. Dec. 12, 2018) ("Alternative service through these means is especially appropriate here because defendants have actual notice of and are actively participating in this action."); *Gurung v. Malhotra*, 279 F.R.D. 215, 220 (S.D.N.Y. 2011) ("In short, the Malhotras have actual notice of this suit, and the modes of service prescribed in the December 2010 Order are not precluded by the GOI's objection to Article X of the Convention.")

when none of the other methods of service expressly provided for in the rule is satisfactory or likely to be successful." Charles Alan Wright, *Federal Practice & Procedure* § 1134 (4th ed. 2015).

The facts here check every box. Phillips 66 mounted an effort to complete service through the Convention, having hired a foreign process server who arranged for service of the documents to India's central authority more than a month ago. The process server testified that the timeframe service on an Indian entity likely requires a *minimum* of eight months—two months longer than the *maximum* six months allowed under the Convention for a country's central authority to complete service. The process server also testified it was impossible to predict how long service via the Convention would ultimately take due to the ongoing covid pandemic.[5] The likely delay and lack of certainty associated with serving Raaj through the Hague Convention renders those procedures impracticable and justifies alternative service. *E.g.*, *Haffner*, 2013 WL 5954379, at *2.

Further, and perhaps more compelling, Raaj indisputably has actual notice of Phillips 66's suit. Rather than engage Phillips 66 on the merits of its suit in the United States, Raaj used its knowledge of the U.S. suit to engage in gamesmanship by filing suit in India and applying for an *ex parte* antisuit restraining order. *See Document Ops.*, 2020 WL 6685488, at *2 (citing defendant's "bad faith to thwart [plaintiff's] attempts to move this action forward" to justify electronic service); *see also US Fire Pump Co., LLC v. Alert Disaster Control (Middle E.) Ltd.*, No. 19-CV-335, 2021 WL 296073, at *14 n. 178 (M.D. La. Jan. 28, 2021) (allowing alternative service where plaintiff credibly alleged foreign party actively evaded service). Raaj's behavior is clearly designed to create delay and increase Phillips 66's costs. *Cf. Snap-on Inc. v. Robert Bosch, LLC*, No. 09-CV-6914, 2011

---

[5] Courts have recognized alternative service under Rule 4(f)(3) may be necessary where the covid pandemic has rendered service through the Hague Convention unpredictable. *See Xiaoyuan Zhang v. Valaris plc*, No. 19-CV-7816, 2021 WL 982460, at *3 (S.D.N.Y. Mar. 16, 2021); *Tevra Brands LLC v. Bayer Healthcare*, No. 19-CV-4312, 2020 WL 3432700, at *5 (N.D. Cal. June 23, 2020).

WL 3610079, at *1 (N.D. Ill. Aug. 16, 2011) (observing that a party wishing to avoid delay "could simply agree to accept service without forcing [plaintiff] to proceed through the Hague Convention").

Finally, this is not a case of a questionable infringement or one that involves a nonculpable mental state. Phillips 66 owns numerous registrations for its marks, which are famous in both the United States and abroad. While Raaj's legal liability remains to be adjudicated, Phillips 66's allegations and supporting evidence attached to its complaint persuasively show that Raaj has willfully appropriated Phillips 66's marks and is using them for its own commercial gain in United States commerce. In addition, Phillips 66 alleges that Raaj's unauthorized use of Phillips 66's famous trademarks undermines Phillips 66's ability to control the nature and quality of goods and services provided under those marks, thereby placing Phillips 66's valuable reputation and goodwill in Raaj's hands. *Id.* ¶¶ 42, 46. Consequently, the harm flowing from Raaj's usurpation of its reputation and goodwill constitutes an ongoing irreparable injury to Phillips 66 in the United States. *See id.*

As such, the facts establish sufficient urgency to authorize alternative service. Raaj's conduct deprives Phillips 66 of control over its marks, compromising Phillips 66's reputation among the public in the United States. The risk is not theoretical—Raaj itself lists the United States first among its "major markets." ECF No. 1 at ¶ 30. Nor is there any reason Phillips 66 should bear any risk of reputational damage. The whole point of service is to give a defendant fair notice, and Raaj not only has notice of Phillips 66's claims but has actively attempted to use Phillips 66's complaint in this action to Raaj's own benefit in the case in India. Between Phillips 66 and an alleged wrongdoer in Raaj's position, equitable principles require that Raaj absorb the full range of harm potentially associated with its conduct. *See Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*, 316 U.S. 203, 206-07 (1942).

Respectfully submitted,

Date: June 1, 2021

*s/ Stephen P. Meleen*
Stephen P. Meleen, Attorney-in-Charge
Texas Bar No. 00795776
S.D. Tex. Bar No. 24154
Alexandra Bistline
Texas Bar No. 24092137
S.D. Tex. Bar No. 2627667
PIRKEY BARBER PLLC
1801 East Sixth Street, Suite 300
Austin, TX 78702
Telephone: (512) 322-5200
Fax: (512) 322-5201
smeleen@pirkeybarber.com
abistline@pirkeybarber.com

**ATTORNEYS FOR PLAINTIFF
PHILLIPS 66 COMPANY**

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 1, 2021 the foregoing was electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to counsel of record, and was served via First Class Mail upon the Defendant at the below address:

RAAJ UNOCAL LUBRICANTS LIMITED
40 Km Stone
Mathura Rd.
Jharsaintly, Ballabhgarh, Faridabad,
Haryana 121004
India

                                                *s/ Stephen P. Meleen*
                                                Stephen P. Meleen