# EXHIBIT A

$~

\*        **IN THE HIGH COURT OF DELHI AT NEW DELHI**

*Reserved on: 30th April, 2021*
*Pronounced on: 25th May, 2021*

+        I.A. 3133/2021  & I.A. 4316/2021 in
CS(COMM) 100/2021

RAAJ UNOCAL LUBRICANTS LIMITED        ..... Plaintiff
Through   Mr.  Akhil  Sibal,  Sr.  Adv.
instructed   by   Mr.   Kapil   Wadhwa,
Ms.Deepika  Pokharia.  &  Ms.  Deepshri,
Advs.

versus

APPLE ENERGY PVT LTD  & ANR.        ..... Defendants
Through    Mr. Neeraj Kishan Kaul and
Mr.  Raj  Shekhar  Rao,  Sr.  Advs.  with  Ms.
Shwetasree  Majumder,  Ms.  Diva  Arora,  Mr.
Aditya  Verma,  Ms.  Vasundhara  Majithia,
Advs.

**CORAM:**
**HON'BLE MR. JUSTICE C.HARI SHANKAR**

**J U D G E M E N T**

%        (video conferencing)

**1.**    By order dated 8th March, 2021 in IA 3133/2021, I had granted ad interim relief to the plaintiff, by restraining the defendant from (i) selling, manufacturing, advertising, promoting or otherwise using the marks ⑯ or any other mark deceptively similar to Plaintiff's trademarks "UNOCAL", UNOCAL or ⑯ with respect to goods falling under Class IV of the Schedule to the Trade Marks Rules, 2017 and (ii) continuing to proceed with <u>Civil Action No.</u>



4:21-cv-279, titled ***Philips 66 Company v. Raaj Unocal Lubricants Ltd***, pending before the United States District Court at the Southern District of Texas ("the Texas Court", in short).

**2.**     The defendants have filed a response to IA 3133/2021 and have also filed IA 4316/2021 under Order XXXIX Rule 4 of the Code of Civil Procedure, 1908 ("CPC"), seeking vacation of the *ad interim* injunction order dated 8th March 2021.

**3.**     At the request of learned Senior Counsel for the parties, I heard them, at length, in the first instance, on the aspect of continuance/vacation of the *ad interim* anti-suit injunction order passed by me on 8th March, 2021.  This judgement disposes of the said prayer.

**4.**     Arguments were advanced, on the aspect of anti-suit injunction, by Mr. Akhil Sibal and Mr. Neeraj Kishan Kaul, learned Senior Counsel for the plaintiff and the defendants respectively.  Written submissions have also been filed by said learned Senior Counsel.

**A Brief Factual Background**

**5.**     The reason for grant of *ad interim* anti-suit injunction, as contained in the order dated 8th March 2021, may briefly be capitulated thus.  The plaintiff contended that it had been established in technical collaboration with the Union Oil Company of California (UNOCAL), which was a petroleum explorer and lubricants

Validity unknown

Digitally Signed
By:SUNIL SINGH NEGI
Signing Date:25.05.2021
17:41:23

IA 3133/2021 & IA 4316/2021 in CS(COMM) 100/2021                Page **2** of 43

manufacturer based in the US, and had, *vide* License Agreement dated 25th September, 1990, been granted license by UNOCAL to use the technical information and know-how of UNOCAL, as well as its trademark, for blending, packaging and marketing of UNOCAL products in India.  This, contends the plaintiff, was followed by a Memorandum of Understanding (MOU) dated 3rd June, 1991, between UNOCAL and the plaintiff, whereunder intellectual property rights in respect of the trademarks "UNOCAL", "UNOCAL 76" and "76" were vested in the plaintiff, against consideration. The MOU further provided for subsequent issuance, by UNOCAL, of a letter in favour of the plaintiff, vesting, in the plaintiff, exclusively, rights to ownership of the said trademarks, for the purpose of manufacturing and marketing in India.  My attention had been invited to the following clause, contained in the MOU, to this effect:

> "Union oil is hereby agreeable to issue a letter in favour of RULL [Raaj Unocal Lubricants Ltd.] with immediate effect by virtue of which the rights to ownership of the trademarks "Unocal", "76" and "Unocal 76" for manufacturing and marketing in India will be vested solely and exclusively with M/s Raaj Unocal Lubricants Ltd and that Union oil shall not stake claim on the same directly or indirectly and/or through its subsidiaries in perpetuity and shall not launch or enter into any such agreement by virtue of which it indirectly or directly, through its subsidiaries, collaborators, distributors, joint venture partners, international offices etc. commences and/or engages into any competing activity of importing blending, contract manufacturing, sale and marketing of similar products under the same or similar brand names.
>
> It is further agreed that the said transfer of rights shall be executed without any royalty or one-time payments as initially suggested and proposed by Union oil and that Union oil finds merit in the arguments put forth by RULL.

*****


Validity unknown
Digitally Signed
By:SUNIL SINGH NEGI
Signing Date:25.05.2021
17:41:23

It is further agreed that the transfer of rights of the trademarks to RULL are not for a limited time period, neither for the duration of the agreement signed and executed between both parties but it is valid and (enforceable) in perpetuity and is irrevocable in nature.

It is further agreed that RULL by virtue of this memorandum of understanding executed between the authorised representatives of both the concerned parties shall approach the competent authorities of Government of India for proceeding with the application of registration of trademark as the sole property of RULL for the trademarks "Unocal", "76" and "Unocal 76" and that Union Oil shall make available a No objection Letter to that effect clearly mentioning transfer of Trademark rights to RULL and shall exercise its powers vested with Union Oil to allow registrations of the same which supersede Article no. 1. Sub LO2 and LO3 of the licensing agreement executed between both parties on 25th September 1990.

*****

RULL agrees and accepts to not challenge, make attempts at registration and/or transfer of previous trademark registrations pursued and registered by Union Oil company for its mother brand "Union 76" and that "Union 76" shall remain the intellectual property of Union Oil Company of California."

A "no objection certificate" was also issued by UNOCAL, in terms of the aforesaid MOU dated 3rd June, 1991, on 5th July, 1991, authorising the plaintiff to register "UNOCAL", "76" and "UNOCAL 76" for exclusive use in India. The plaintiff has, pursuant thereto, applied with the Registrar of Trademarks for registration of the said marks in India. Defendant No 2 instituted opposition proceedings with the Registrar of Trademarks in India, against the application of the plaintiff, and also filed its own applications for registration of the "76" trademark in India on a "proposed to be used" basis. The

Validity unknown
Digitally Signed
By:SUNIL SINGH NEGI
Signing Date:25.05.2021
17:41:23

Registrar of Trademarks objected to the applications of Defendant No. 2 on 21st January, 2021. Defendant No. 2 also obtained the assignment of the original application filed by UNOCAL before the Registrar of Trademarks for registration of the "  " mark in its favour. This, according to the plaintiff, was completely impermissible.

6.     The merits of these allegations and counter allegations need not detain us beyond a point, concerned, as we are, in this judgement, with <u>Civil Action No. 4:21-CV-279</u>, filed by Defendant No. 2 before the Texas Court.

<u>Proceeding filed by Defendant No. 2 before the Texas Court</u>

7.     In the Texas Court, Defendant No. 2, claiming to be the successor-in-interest of UNOCAL in the US, asserted that it was using the ,  and  marks since 1932 in connection with petroleum products and services.  UNOCAL, additionally, was stated to be using the marks "UNION 76", "UNOCAL 76" and "76 LUBRICANTS" in connection with the said products and services.  Apropos the manner in which Defendant No. 2 claimed to succeed in interest to the use of the aforesaid marks in the US, the complaint asserted that (i) in 1997, UNOCAL sold the rights to use the "76 marks" for refining and marketing operations to M/s Tosco Corporation, which was purchased by the Phillips Petroleum Company, alongwith all rights in the "76 marks" in 2001, (ii) in 2002, Phillips Petroleum Company merged with Conoco Inc. into ConocoPhillips, (iii) in 2012, ConocoPhillips

Validity unknown

Digitally Signed
By:SUNIL SINGH NEGI
Signing Date:25.05.2021
17:41:23

divested all its operations as well as rights to the "76 marks" in connection therewith, to a newly created company Phillips 66, i.e. Defendant No.2, and (iv) since then, Defendant No. 2 claimed continuous user of the "76 marks" in connection with its products and services.   The complaint also claimed that Defendant No. 2 had licensed the mark "76" for lubricants internationally in Asia. Defendant No. 2, as the complainant, claimed to be aggrieved by the usage, by the plaintiff (who was the defendant in the Texas Court), of marks which were similar to the "76 marks" prominently in connection with its business by (i) using the name "UNOCAL 76" with a corresponding design mark as its brand name, (ii) claiming, on its website unocalglobal.com that it was "a Lube Brand of USA" and "a Brand of USA since 1890", (iii) using the allegedly counterfeit marks on the "History" page of its website to suggest affiliation with Defendant No. 2 and (iv) using the allegedly infringing marks on its social media pages.   Thus, alleged Defendant No. 2 before the Texas Court, the plaintiff had "intentionally targeted the goods and services offered under the counterfeit marks to United States customers".   The Texas complaint cites, as evidence to indicate that the plaintiff was targeting the US market, (i) the claim, on the plaintiff's website, that "UNOCAL 76" has its footprints worldwide covering over 57 countries across 6 continents, major markets being United States of America, Japan, China, Bangladesh, Nepal, India, Pakistan, and Thailand among others, (ii)  the facility provided, on its website www.unocalglobal.com, for submission of applications with the plaintiff to "Create Your Own Formula", thereby promising potential customers, including those located in the United States, that the

customers could formulate the products needed for any application, and (iii) the facility, on the website of the plaintiff whereby, by clicking the "Contact Us" button, a dropdown option would open, whereunder any person, including entities located in the US, could become a distributor of the plaintiff.  These activities, alleged the complaint, were likely to deceive customers and potential customers, including those located in the US, into associating the products of the plaintiff with those of the defendant, thereby diluting the defendant's marks.  Alleging violation, thereby, of various statutes in force in the US, as well as infraction of the common law rights of the defendant, the complaint concluded with the following prayer clause:

"Wherefore, Philips 66 prays that:

a)    Defendant, Defendant's agents, servants, employees, attorneys, licensees, and all those persons and legal entities in active concert or participation with them, be preliminarily and permanently enjoined from using the 76 marks, the Counterfeit marks, and any other mark or trade dress confusingly similar thereto;

b)    Defendant, Defendant's agents, servants, employees, attorneys, and all those persons and legal entities in active concert of participation with them, be required to immediately remove or otherwise eliminate all elements and instances of the 76 marks or the Counterfeit marks that appear on Defendant's products and promotional materials, including its website at unocalglobal.com and all digital and social media accounts;

c)    Defendant be ordered to file with this Court and to serve upon Phillips 66, within 30 days after the entry and service on Defendant of an injunction, a report in writing and under oath setting forth in detail the manner and form in which Defendant has complied with the injunction;

Validity unknown
Digitally Signed
By:SUNIL SINGH NEGI
Signing Date:25.05.2021
17:41:23

d)      Phillips 66 recover all damages it has sustained as a result of Defendant's infringement, dilution, false designation of origin, unfair competition, and unjust enrichment, and that such damages be trebled;

e)      An accounting be directed to determine Defendant's profits resulting from Defendant's activities, and that such profits be paid over to Phillips 66, increased as the Court finds to be just under the circumstances of this case;

f)      Alternatively, if greater, Plaintiff recover statutory damages under 15 U.S.C. § 1117 as a result of Defendant's counterfeiting;

g)      Plaintiff's nominal damages, if the Court does not award statutory damages, actual damages, or an accounting of profits;

h)      Phillips 66 recover its reasonable and necessary attorney's fees;

i)      Phillips 66 recover its costs of this action and prejudgment and post-judgement interest; and

j)      Phillips 66 recover such other relief as the Court may find appropriate."

*Ad interim* <u>anti-suit injunction order dated 8th March, 2021</u>

**8.**      Observing that Defendant No. 2 had concealed, from the Texas Court, the rights of the plaintiff over the "76" mark, in respect of which the plaintiff and Defendant No. 2 were litigating before the Registrar of Trademarks, and keeping in view the fact that the plaintiff was not claiming any trademark rights in the US and that any claim of infringement, with respect to the rights of the plaintiff, would have to be determined in India, I opined, in my order dated 8th March, 2021, that the proceedings in the Texas Court were oppressive and vexatious


Validity unknown
Digitally Signed
By:SUNIL SINGH NEGI
Signing Date:25.05.2021
17:41:23

IA 3133/2021 & IA 4316/2021 in CS(COMM) 100/2021          Page **8** of 43

in nature and that any order passed thereon against the plaintiff was likely to result in irreparable injury to it.  In view thereof, I granted *ex parte ad interim* injunction, restraining the defendants from continuing with the proceedings before the Texas Court.

9.      The order dated 8th March, 2021 also restrained the defendants, *ex parte* and *ad interim*, from infringing the plaintiff's marks.  Though the present application, under consideration, preferred by the defendants under Order XXXIX Rule 4 of the CPC seeks vacation of the order dated 8th March, 2021 on both these aspects, for the present judgement, the discussion is limited to the aspect of anti-suit injunction.

Case of the defendants in the present applications qua prayer for vacation of anti-suit injunction granted by this Court – initial submissions of Mr. Neeraj Kishan Kaul

10.      Arguing for the defendants in support of the prayer for vacating the anti-suit injunction granted by me on 8th March, 2021, Mr. Neeraj Kishan Kaul, learned Senior Counsel, submitted that the Texas Court proceedings were not concerned, in any manner, with the plaintiff's activities in India.  They were intended to interdict infringement by the plaintiff, of the defendants' trademark rights over the "76" mark in the US.  Trademark rights, points out Mr. Kaul, are territorial in nature.  Even while contending, in the present plaint, that the plaintiff was espousing its rights over the "76" mark only in India, and possessed ownership rights over the said mark only within this country, the plaintiff's website and social media account indicated that

Validity unknown
Digitally Signed
By:SUNIL SINGH NEGI
Signing Date:25.05.2021
17:41:23

they were seeking to establish a global identity for the "76" mark and, thereby, hijack the intellectual property rights over the said mark, possessed by Defendant No. 2 in the US. In this connection, Mr. Kaul drew my attention to the various facts, pleaded in the Texas complaint and referred to hereinbefore, to justify the apprehension of Defendant No. 2 that the plaintiff was also targeting customers in the US. It was in these circumstances that Defendant No. 2, as the indisputable owner of the "76" marks in the US, filed, in Texas, the complaint dated 28th January, 2021. In the application, Defendant No. 2 specifically avers thus with respect to the Texas Court proceedings:

> "Specifically, Defendant No. 2 seeks to enjoin the Plaintiff herein from using the "76" marks in connection with the English-language website (unocalglobal.com) and social media pages that target United States customers. The United States Lawsuit does not, nor does it purport to, seek to enjoin the Plaintiff from use of the "76" marks in India. For example, the Complaint filed in the United States Lawsuit does not mention the Plaintiff's Indian domain name (unocal.in), nor the said complaint of the Plaintiff's use of the mark in India or its Indian trademark applications."

Mr. Kaul submits that, so long as the "76" mark, over which exclusive rights of usage in the US vested with Defendant No. 2, was not reflected on the plaintiff's website as accessible in the US, his client had no grievance, so far as the US proceedings were concerned. The purpose and intent of the prayers in the Texas complaint, he submits, was only to prevent use of the "76" mark on the unocalglobal.com website of the plaintiffs, which was accessible in the US as well.

**11.** Insofar as the aspect of alleged failure, on the part of the defendants, to place all facts before the Texas Court, was concerned,

Validity unknown
Digitally Signed
By:SUNIL SINGH NEGI
Signing Date:25.05.2021
17:41:23

Mr. Kaul submitted that the procedure in different courts was different and that the defendants had disclosed, in the Texas proceedings, all facts which were necessary to be disclosed in the light of Texas procedural law.  In case any fact was concealed by the defendants, it was always open to the plaintiff, points out Mr. Kaul, to urge such facts in its response before the Texas Court.  The right to seek discovery was also, moreover, available to the plaintiff.

12.    Citing the judgement of the Supreme Court in ***Modi Entertainment Network v. W.S.G. Cricket Pte Ltd*[1]** and of a Division Bench of this Court in ***Magotteaux Industries Pvt Ltd v. A.I.A. Engineering Ltd*[2]** in his support, Mr. Kaul emphasised the principle of comity of courts, which was necessarily required to be borne in mind while considering an application for anti-suit injunction.  An anti-suit injunction, he submits, causes interference in the functioning of a Court of co-equal sovereign jurisdiction, and would be justified only if it was necessary in order to advance the ends of justice and prevent perpetuation of injustice.   These delineating criteria, submits Mr. Kaul, do not stand satisfied in the present instance.   Besides, he submits, the plaintiff has not demonstrated, in any manner, that the continuance of the Texas proceedings were oppressive or vexatious to the present proceedings pending before this Court.

13.    Mr. Kaul further points out that, in the Texas complaint, the defendants had agitated the rights to the "76" trademark in the US, and had alleged infraction of various US statutes.  As such, by its very

---

[1] **(2003) 4 SCC 341**
[2] **2009 (39) PTC 212 (DB)**


Validity unknown
Digitally Signed
By:SUNIL SINGH NEGI
Signing Date:25.05.2021
17:41:23

nature, he submits, the Texas complaint could not have been preferred in India.  Even on this ground, submits Mr. Kaul, continuance of the anti-suit injunction granted by this Court on 8th April, 2021, would not be justified.

14.    The argument, of Mr. Sibal (to which allusion would be made in greater detail hereinafter) that technological constraints governing the internet would make it impossible for the plaintiff to operate its website even in India, if injunction, as sought in the Texas proceedings was granted by that Court, submits Mr. Kaul, is entirely irrelevant to the issue of grant of anti-suit injunction, or the justification for continuing the injunction already granted.  These concerns, he points out, could always be voiced by the plaintiff before the Texas Court.  In any event, submits Mr. Kaul, the plaintiff could hardly pray for anti-suit injunction on the basis of a possible effect of an order which may come to be passed in future in the Texas proceedings.  Anti-suit injunctions, submits Mr. Kaul, cannot be issued on such hypothetical and presumptive considerations.  In substance, submits Mr. Kaul, the plaintiff is misusing the process of this Court to avoid contesting the defendants' complaint filed before the Texas Court.  The anti-suit injunction apparatus cannot, he submits, be used for such oblique purposes.

15.    Mr Kaul prays, therefore, that the anti-suit injunction already granted by me on 8th March, 2021, be vacated.

Submissions by Mr. Sibal by way of reply


Validity unknown
Digitally Signed
By:SUNIL SINGH NEGI
Signing Date:25.05.2021
17:41:23

IA 3133/2021 & IA 4316/2021 in CS(COMM) 100/2021                Page **12** of 43

16.     Mr. Sibal, in reply, disputes the stand of the defendants that the Texas proceedings are only in respect of the plaintiff's activities in the US.  He submits that, in its letter dated 29th January, 2021, addressed (through Counsel) to the plaintiff, Defendant No. 2 also called upon the plaintiff to desist from the allegedly "unlawful" use of the "76" trademarks "in the United States and India, in a manner likely to negatively impact US commerce, confuse US consumers and cause irreparable harm to" Defendant No. 2.  The same notice required the plaintiff to "promptly cease all existing use of the infringing marks, 76 marks and any confusingly similar marks in India, the United States and anywhere else…" This letter, read in conjunction with the reliefs sought in the Texas complaint, submits Mr. Sibal, indicates that the Texas complaint was not merely directed against the plaintiff's activities in the US (which, according to him, are non-existent). Instead, submits Mr. Sibal, Defendant No. 2 was attempting to obtain an order, from the Texas Court, which could impact the legitimate use of the "76" mark by the plaintiff in India.

17.     Mr. Sibal refutes the submission, of Mr. Kaul, that the representations contained on the plaintiff's website and social media pages indicated that the plaintiff was expanding its activities to the US, or that they could even create a legitimate apprehension to the effect.  He submits that the defendants are well aware of the fact that the plaintiff does not have, and does not intend to have, activities in the US.  The representations contained on the plaintiff's website and social media pages were merely in exercise of the exclusive rights

Validity unknown
Digitally Signed
By:SUNIL SINGH NEGI
Signing Date:25.05.2021
17:41:23

held by the plaintiff, for use of the "76" mark in India.   If the submission of the defendants was to be accepted, submits Mr. Sibal, it would be possible to invoke jurisdiction of any Court anywhere in the world merely on the ground of the ubiquitous internet presence of a business entity, even if only for the purpose of advertisement and promotional requirements. Defendant No. 2 could not, in his submission, contend, on the basis of the said representations, that it could legitimately invoke the jurisdiction of the Texas Court.

18.    On first principles, Mr. Sibal contends that there was no limitation, in law, to grant of anti-suit injunction only where the foreign proceedings were oppressive or vexatious to the proceedings in India.  The "oppressive or vexatious" test, he submits, is an effect-based test; in other words, the Court is required to see whether the effect of continuation or grant of the reliefs sought in the foreign proceedings would be oppressive or vexatious to the plaintiff in India. If the reliefs sought by the defendants before the Texas Court were to be granted, it would result in the plaintiff having to remove reference to the "76" mark from its webpage, even as accessed in India which would, *ex facie*, be vexatious and oppressive.

19.    Mr. Sibal also submits that the fact of intellectual property rights being territorial in nature is irrelevant to the issue of grant of anti-suit injunction, as anti-suit injunction has often been granted by this Court, of intellectual property rights proceedings pending in foreign courts for infringement, where they were found to be vexatious or oppressive in nature.  For this purpose, he relies on *H.T.*

Validity unknown
Digitally Signed
By:SUNIL SINGH NEGI
Signing Date:25.05.2021
17:41:23

*Media Ltd v. Brainlink International, Inc.[3]* and *(India TV) Independent News Service Pvt Ltd v. India Broadcast Live LLC[4]*. He emphasises that, even in *Modi Entertainment Network[1]*, one of the situations in which grant of anti-suit injunction was treated as justified was where, if injunction were declined, the ends of justice would be defeated and injustice perpetuated.

20.     In examining this issue, he submits, the Court is required to consider the legitimate personal or juridical advantage that the defendant seeks in the foreign proceedings.  A plain reading of the Texas complaint, he points out, makes it apparent that it was premised on the online use, by the plaintiff from India of the "76" mark, and not on any actual trade of its products, using the said mark, in the US. The plaintiff did not have any e-commerce website either.  As such, he submits, grant of the reliefs sought before the Texas Court would have extraterritorial consequences, affecting the plaintiff's exclusive use of its mark in India.  This, submits Mr. Sibal, was in fact the real object behind the Texas proceedings.  The entire course of action pleaded by Defendant No. 2 in the Texas complaint, he points out, stemmed solely out of the Indian website of the plaintiff and the social media sites of the plaintiff hosted from India.

21.     Mr. Sibal submits that, without prejudice, his client was willing to make a statement that it had no intention to do business in the US, using the "76" mark.   This, he submits, eroded, effectively, the ostensible  foundation  of  the  Texas  complaint,  inasmuch  as  the

---

[3] 2020 SCC OnLine Del 1703
[4] 2007 SCC OnLine Del 965


Validity unknown
Digitally Signed
By:SUNIL SINGH NEGI
Signing Date:25.05.2021
17:41:23

injunctive relief sought therein stood granted by the said undertaking, which ensured that the plaintiff would not target any potential customers in the US through its online pages.  In fact, submits Mr. Sibal, the plaintiff had demonstrated its bona fides by geo-blocking its website and Facebook page in the US and deactivating its Twitter handle, so that none of these would be accessible in the US.  He submits that his client was also willing to geo-block its LinkedIn page, if that were technically possible.  This, coupled with the undertaking, of the plaintiff, not to sell or market its products under the "76" mark in the US, he submits, satisfied the reliefs claimed in the Texas complaint.  There was no justification, thereafter, for the defendants to continue to press for injunctive relief in the US, and no legitimate juridical advantage remained, to be earned by the defendants by continuing with the Texas proceedings.

22.    Invoking the *forum conveniens* principle, Mr. Sibal submitted that the *forum conveniens*, to seek any restraint on online use by the plaintiff of the "76" mark, was India.  The grievance of the defendants being against the plaintiff's website, Mr. Sibal submits that the litigation could just as well have been filed in India.  The disinclination, of the defendants, to proceed against the plaintiff in India, according to Mr. Sibal, was clearly *mala fide*.

23.    Grant of the remedy sought before the Texas Court, he submits, would result in inability, on the part of the plaintiff, to protect its "76" mark, as it would result in blocking of the plaintiff's website in India or, at the very least, in removal, from the website, of reference to the "76" mark globally, which would be oppressive and vexatious.  Mr.


Validity unknown
Digitally Signed
By:SUNIL SINGH NEGI
Signing Date:25.05.2021
17:41:23

IA 3133/2021 & IA 4316/2021 in CS(COMM) 100/2021                    Page **16** of 43

Sibal also submits that, in view of the amplitude of the prayers in the Texas complaint, the burden, to show that they were not oppressive or vexatious to the plaintiff, was on the defendants.

24.     What the defendants seek, in a sense, according to Mr. Sibal, is alteration, by the plaintiff, of its website, which it hosts from India.  In case the grievance of the defendants is with respect to customers in the US being influenced by the plaintiff's website, Mr. Sibal submits that the obvious remedy would be geo-blocking of the website, so as to render it inaccessible in the US.  This, he submits, the plaintiff has already done.  If the defendants were *bona fide*, he submits, they ought to be ready to make a statement, before this Court, that prayers (a) to (c) in the Texas complaint stand satisfied by the geo-blocking of the plaintiffs website, rendering it inaccessible in the US.  If they are not ready to do so, submits Mr. Sibal, this Court has, in order to protect the plaintiff from the oppressive and vexatious nature of the Texas proceedings, necessarily to injunct the defendants from prosecuting prayers (a) to (c) in the Texas complaint.  Grant of the said prayers, reiterates Mr. Sibal, would necessarily require the plaintiff to discontinue its website altogether.

25.     Mr. Sibal submits that the defendants have, in the Texas complaint, stated that the goods and services sold by the plaintiff using the "76" marks were not genuine Philips 66 goods or services, and that the plaintiff had "intentionally targeted the goods and services offered under the counterfeit marks to US customers", whereas the plaintiff had not sold anything in the US.  This fact, points out Mr.

Validity unknown
Digitally Signed
By:SUNIL SINGH NEGI
Signing Date:25.05.2021
17:41:23

Sibal, was also clear from the evidence of the plaintiff in the opposition proceedings initiated by the defendant before the Registrar of Trade marks.

26.     Mr. Sibal also emphasises the fact that the prayers in the Texas complaint do not incorporate any caveat, restricting their amplitude to the activities of the plaintiff in the US.  The assurance extended by Mr. Kaul in Court is not, therefore, he submits, reflected on paper.

27.     Mr. Sibal also sought to draw sustenance from certain passages from Dicey, Morris & Collins' celebrated treatise on The Conflict of Laws, to contend that bad faith, in the institution of the foreign proceeding, rendered it "vexatious" and justified anti-suit injunction. The entire exercise, Mr. Sibal submitted, has essentially to be examined *ex debito justitiae*.  Any continued prosecution, by the defendant, of the Texas complaint, even after the plaintiff had geo-blocked its website so as to render it inaccessible in the US, in the submission of Mr. Sibal, disclosed clear bad faith on the part of the defendants.   In this context, Mr. Sibal cited the judgement of a coordinate bench of this Court in ***Swami Ramdev v. Facebook***[5], particularly paras 38, 46, 50, 51, 53 to 55, 58, 59, 82 to 84 and 88 of the report.  Mr. Sibal submits that though, in ***Swami Ramdev***[5], no global injunction was sought, the effect of the injunction sought by the defendant was global.

---

[5] **2019 (263) DLT 689 : 2020 (81) PTC 54**

Validity unknown
Digitally Signed
By:SUNIL SINGH NEGI
Signing Date:25.05.2021
17:41:23

**28.**    Mr. Sibal cites, additionally, the decision of the Court of Appeal in *Smith Kline & French Laboratories Ltd v. Bloch*[6] and of the Privy Council in *Societe Nationale Industrielle Aerospatiale v Lee Kui Jak*[7] (which was referenced in *Modi Entertainment Network*[1]).

<u>Submissions of Mr. Kaul in rejoinder</u>

**29.**    Arguing in rejoinder, Mr. Kaul submits that the Texas proceedings could not be treated as vexatious or oppressive , as there was no interdiction against this Court continuing with the present proceedings, for which purpose he relies on the Explanation to Section 10 of the Code of Civil Procedure, 1908 (CPC).  He points out that there could be no question of the defendants prosecuting the action, presently pending before the Texas Court, in India, as they were enforcing their US trademarks.  Qua the submissions of Mr. Sibal regarding the justifiability and *bona fides* of the US action, Mr. Kaul submits that the merits of the Texas proceedings have to be decided by the Texas Court, and not by this Court while dealing with an application for an anti-suit injunction.  Apropos the submission, of Mr. Sibal, that, once the plaintiff had geo-blocked its websites so as to be inaccessible in the US, the defendants were required to withdraw their Texas complaint, Mr. Kaul submits that he was not raising geo-blocking as a defence against the anti-suit injunction application of the plaintiff.  Besides, he submits, the suggestion for geo-blocking, as extended by him, could bring the Indian litigation to an end, but could not result in termination of the Texas proceedings.  The submission,

---

[6] **(1983) 1 WLR 730 (CA)**
[7] **(1987) AC 871 (PC)**


Validity unknown
Digitally Signed
By:SUNIL SINGH NEGI
Signing Date:25.05.2021
17:41:23

he clarifies, was made only in view of the apprehension expressed by the plaintiff that grant of the reliefs sought in the Texas complaint would altogether shut down the website of the plaintiff.

30.     Insofar as the Legal Notice dated 29th January, 2021, from the defendants to the plaintiff, was concerned, Mr. Kaul submitted that the notice was in the nature of a privileged communication and ought not to have been cited by the plaintiff in the present proceedings.  That apart, he submits that the assertions and allegations in the legal notice were obviously without prejudice.   Once the defendants had submitted, before this Court, that they were restricting the Texas proceedings to the activities of the plaintiff in the US, Mr. Kaul submits that nothing survives in the anti-suit injunction application of the plaintiff.  He points out, in this context, para 15 of the Texas complaint, in which it is averred that "Registration Nos. 0,754,420; 0,764,442; 2,935,849; 3,727,675; 3,492,578; 3,495,946; 3,069,038; 3,694,150; 3,024,484; 3,694,150; 3,093,884; 3,107,583; 2,938,185; 3,042,693; 2,940,047; 3,176,763; 3,176,768  are incontestable under 15 U.S.C. § 1065", as well as para 55, in which it is alleged that "the acts of Defendant complained of herein constitute trademark counterfeiting in violation of 15 U.S.C. §1114".   Mr. Kaul also disputes the stand of Mr. Sibal regarding the situs of onus of proof, asserting that the onus, to establish that the foreign proceeding was oppressive or vexatious was squarely on the plaintiff.

31.     Mr. Kaul also sought to distinguish the judgement in *Swami Ramdev[5]* on the ground that the issue, in that case, dealt with the


Validity unknown
Digitally Signed
By:SUNIL SINGH NEGI
Signing Date:25.05.2021
17:41:23

reputation of the plaintiff, which was, unlike intellectual property, a global right, not bound by territorial considerations. Besides, he submits, the decision merely decided whether geo-blocking would be covered by Section 79 of the Information Technology Act, 2000 and was not, therefore, of any applicability to the present case. Rather, Mr. Kaul reiterated that, in *Modi Entertainment Network[1]*, the Supreme Court has emphasised that anti-suit injunctions were to be sparingly granted. What, effectively, the plaintiff desired to accomplish, submits Mr. Kaul, is fixation of India as a global forum to decide all intellectual property disputes relating to the "79" mark which was, obviously, misconceived.

## Analysis

## The legal position

**32.**    It is important to recognise, at the outset, the limitations on the Court, while granting anti-suit injunctions. There is no gainsaying the plain fact that anti-suit injunctions interfere with the exercise of jurisdiction by the Court in another sovereign territory to which the jurisdiction of the injuncting Court does not extend. Courts in India cannot grant injunctions to protect their citizens from orders passed by Courts in other sovereign territories. If a Court, in another sovereign territory, is passing an order which affects an Indian citizen in India, it is essentially for that citizen to take up the matter with the Court which has passed, or is likely to pass, such an order. It is neither possible, nor permissible, for the Court to assume the role of a

Validity unknown
Digitally Signed
By:SUNIL SINGH NEGI
Signing Date:25.05.2021
17:41:23

IA 3133/2021 & IA 4316/2021 in CS(COMM) 100/2021                    Page **21** of **43**

watchdog, protecting each citizen from orders passed by foreign Courts.

**33.**     There are, essentially, only two circumstances in which an Indian citizen can shield himself against the effect of proceedings pending before a foreign Court.  These are to be found in Section 13 of the CPC[8] and in the power of the Indian court to grant anti-suit injunction.  Section 13 applies where the judgement has already been passed by the foreign Court, whereas anti-suit injunctions are granted where the proceedings are pending before the foreign Court.  Clauses (a) to (f) of Section 13 essentially delineate the circumstances in which a foreign judgement would not be conclusive as to the matter adjudicated thereby.  Absent these handicaps, orders of foreign courts would also apply to Indian citizens in India.  The court cannot profess to greater wisdom than the legislature, regarding the rights of citizens which require statutory protection.

**34.**     Anti-suit injunctions are, on the other hand, granted to bring to a halt the prosecution, by one or the other party before the Indian Courts, of the proceedings pending in a foreign Court.  It is axiomatic that a court in one sovereign jurisdiction, cannot stay proceedings pending before a Court in another sovereign jurisdiction, for the

---

[8] "**13.     When foreign judgment not conclusive. –** A foreign judgment shall not be conclusive as to any matter thereby directly adjudicated upon between the same parties or between parties under whom they or any of them claim litigating under the same title except –

    (a)      where it has not been pronounced by a Court of competent jurisdiction;

    (b)      where it has not been given on the merits of the case;

    (c)      where it appears on the face of the proceedings to be founded on an incorrect view of international law or a refusal to recognize the law of India in cases in which such law is applicable;

    (d)      where the proceedings in which the judgment was obtained are opposed to natural justice;

    (e)      where it has been obtained by fraud;

    (f)      where it sustains a claim founded on a breach of any law in force in India."


Validity unknown
Digitally Signed
By:SUNIL SINGH NEGI
Signing Date:25.05.2021
17:41:23

simple reason that courts do not possess appellate or supervisory powers across political boundaries. An anti-suit injunction, therefore, does not stay proceedings before the foreign Court, but merely restrains the party, before the Indian Court, from prosecuting, or continuing to prosecute, the proceedings before the foreign Court.  It is a directive to the party before the Indian Court, over which the Indian Court possesses jurisdiction, and not a direction to the foreign Court, or even a *direct interference* with the continuance of the proceedings before the foreign Court.

35.    Having said that, it is obvious that, if a party before the Indian Court is to be restrained from prosecuting the proceedings pending before the foreign Court, indirect interference with such proceedings would take place.  The Indian Court is, obviously, powerless to prevent the foreign Court from proceeding with the matter, but the Indian litigant who, despite the order of this Court, continues to prosecute the foreign proceedings does so on pain of contempt or other coercive action.  Interference with proceedings pending before a foreign Court, in another sovereign jurisdiction, is obviously to be avoided if possible; which is why anti-suit injunctions are to be granted only in the rarest of rare cases, and with considerable circumspection.  The law on the point, as evolved by Indian Courts, primarily the Supreme Court, restricts grant of such anti-suit injunctions to cases where the foreign proceedings are "oppressive or vexatious", keeping in mind the overarching need to ensure the "interests of justice".

Validity unknown
Digitally Signed
By:SUNIL SINGH NEGI
Signing Date:25.05.2021
17:41:23

**36.** The judgements of the Supreme Court, which pronounce on the aspect of anti-suit injunction are, essentially, *O.N.G.C. v. Western Co. of North America[9]*, *Modi Entertainment Network[1]*, *Enercon (India) Ltd v. Enercon GMBH[10]* and *Dinesh Singh Thakur v. Sonal Thakur[11]*.

**37.** *O.N.G.C.[9]* dealt with an arbitral award, passed in a dispute between ONGC and Western Company of North America ("Western", in short), for the confirmation of which Western moved the US District Court. The arbitration agreement provided that the arbitral proceedings would be governed by the Indian Arbitration Act, 1940 ("the 1940 Act"). ONGC petitioned this Court, under Sections 30 and 33 of the 1940 Act, for setting aside the award. An application for grant of anti-suit injunction, restraining Western from continuing to prosecute the proceedings before the US District Court, was also moved. Having failed before the High Court, ONGC approached the Supreme Court. The Supreme Court observed that, under the 1940 Act by which the parties were contractually bound, the arbitral award was not enforceable till it was made rule of court and judgement and decree passed in terms thereof. If the proceedings before the US District Court were to be allowed to continue, therefore, there was every possibility of an unenforceable award being enforced, contrary to the law which governed the contract between the parties. Requiring ONGC to be placed in an inextricable situation, as would arise if such an order were to be passed by the US District Court, it was held,

---

[9] (1987) 1 SCC 496
[10] (2014) 5 SCC 1
[11] (2018) 17 SCC 12


Validity unknown

Digitally Signed
By:SUNIL SINGH NEGI
Signing Date:25.05.2021
17:41:23

would be "oppressive to ONGC".  In such a case, denying ONGC the prayer for anti-suit injunction was held to be "neither just nor fair on the part of the Indian Court".  The Supreme Court went to the extent of observing that "it would be difficult to conceive of a more appropriate case for granting such relief".

38.    This decision assumes particular importance for three reasons. Firstly, it elucidates a specific instance in which the continuation of the foreign proceedings were found to be oppressive to the opposite party in India.  Secondly, and perhaps more significantly, the finding of oppression was returned on the basis of the possible order which the foreign Court might come to pass, were the prayers made before it to be allowed.   In other words, *while examining the aspect of "oppression", the Indian Court has also to take into consideration the situation which would result, if the relief sought before the foreign Court were to be granted.*  Thirdly, it illustrates that the existence – or even the possibility – of "oppression", as a ground to grant anti-suit injunction, is to be assessed *vis-à-vis the proceedings pending in the Indian Court*.   In the facts before the Supreme Court, ONGC had challenged the award before the Indian Court, invoking Sections 30 and 33 of the 1940 Act as, per contract, the arbitration was governed thereby.  The Supreme Court found that, were the US Court to enforce the award contrary to the mandate of the 1940 Act – which, in all possibility, would not be taken into account by the US Court (as the Supreme Court itself holds) – it would place ONGC in an "inextricable" situation, as an unenforceable award would have been enforced, and ONGC would lose the chance to challenge it under

Validity unknown
Digitally Signed
By:SUNIL SINGH NEGI
Signing Date:25.05.2021
17:41:23

Sections 30 and 33.  Irreversible prejudice would, therefore, result to the Indian proceedings initiated by ONGC, in accordance with the 1940 Act and, consequently, the contract between the parties.  It is *this* irreversible prejudice which was found, by the Supreme Court, to be "oppressive".  It is important, therefore, that the Court has to examine the aspect of "oppression", for the purpose of grant of anti-suit injunction, *vis-à-vis the proceedings pending before it*, and not *in vacuo*.

39.     While, therefore, Mr. Sibal is correct in his contention that the test of "oppression" or "vexation" has to be effect-based, i.e., what has to be seen is *the effect* of the continuation of the foreign proceedings, or the grant of the relief sought in the said proceedings, that effect has to be seen *vis-à-vis* the Indian proceedings, and not *vis-à-vis* the Indian parties.   In other words, if the continuance of the foreign proceedings, or the order which would result, were the prayer in the foreign proceedings to be granted, would be oppressive *to the Indian proceedings*, and the case set up by the opposite party in the Indian proceedings, then an anti-suit injunction might be justified.   If, however, the Indian proceedings are not prejudiced by the continuance, or outcome, of the foreign proceedings, then, the foreign proceedings cannot be treated as oppressive, even if they otherwise prejudice one or the other party before the Indian Court.  Howsoever the order of a foreign Court, or the proceedings likely to result in such order, may prejudice a party before the Indian Court, an anti-suit injunction is not the panacea, unless and until the proceedings in the

Validity unknown
Digitally Signed
By:SUNIL SINGH NEGI
Signing Date:25.05.2021
17:41:23

foreign Court are oppressive to the party in prosecuting its proceedings in the Indian Court.

40.    In ***Modi Entertainment Network[1]***, exclusive license to grant commercial rights, in respect of a cricket tournament to be conducted in Kenya, was granted by the International Cricket Council (ICC) to the respondent before the Supreme Court who would be referred to, hereinafter, as "WSG".  WSG granted exclusive license to the second appellant before the Supreme Court, who assigned its rights to Modi Entertainment Network ("Modi", hereinafter), against a consideration of US $ 35 lakhs.  Modi sued WSG in the High Court of Bombay, claiming damages for loss of advertising revenue due to illegal threats allegedly extended by WSG.  WSG launched a cross suit against Modi before the Queen's Bench Division of the High Court in England ("the UK Court", hereinafter), for the minimum guaranteed amount under the agreement.  Modi entered appearance before the UK Court and, thereafter, applied, before the High Court of Bombay, for an anti-suit injunction against WSG, restraining it from proceeding with the UK proceedings.  It was pleaded, by Modi, that the UK proceedings were vexatious and oppressive.  Having failed before the Division Bench of the High Court, Modi appealed to the Supreme Court.

41.    The Supreme Court observed, at the outset, that, though anti-suit injunctions were merely another specie of injunction, they had to be granted sparingly, as they interfered with the exercise of jurisdiction by another Court.  Thereafter, in para 24 of the report, the

Validity unknown
Digitally signed
By:SUNIL SINGH NEGI
Signing Date:25.05.2021
17:41:23

following principles were laid down, by the Supreme Court which, to date, are regarded as authoritative on the point:

"(1)    In exercising discretion to grant an anti-suit injunction the court must be satisfied of the following aspects:

(*a*)    the defendant, against whom injunction is sought, is amenable to the personal jurisdiction of the court;

(*b*)    if the injunction is declined, the ends of justice will be defeated and injustice will be perpetuated; and

(*c*)    the principle of comity — respect for the court in which the commencement or continuance of action/proceeding is sought to be restrained — must be borne in mind.

(2)    In a case where more forums than one are available, the court in exercise of its discretion to grant anti-suit injunction will examine as to which is the appropriate forum (forum conveniens) having regard to the convenience of the parties and may grant anti-suit injunction in regard to proceedings which are oppressive or vexatious or in a forum non-conveniens.

(3)    Where jurisdiction of a court is invoked on the basis of jurisdiction clause in a contract, the recitals therein in regard to exclusive or non-exclusive jurisdiction of the court of choice of the parties are not determinative but are relevant factors and when a question arises as to the nature of jurisdiction agreed to between the parties the court has to decide the same on a true interpretation of the contract on the facts and in the circumstances of each case.

(4)    A court of natural jurisdiction will not normally grant anti-suit injunction against a defendant before it where parties have agreed to submit to the exclusive jurisdiction of a court including a foreign court, a forum of their choice in regard to the commencement or continuance of proceedings in the court of choice, save in an exceptional case for good and sufficient reasons, with a view to prevent injustice in circumstances such as which permit a contracting party to be relieved of the burden of the contract; or since the date of the contract the circumstances or subsequent events have made it impossible for the party seeking injunction to prosecute the case in the court of choice because the essence of the jurisdiction of the


Validity unknown
Digitally Signed
By:SUNIL SINGH NEGI
Signing Date:25.05.2021
17:41:23

IA 3133/2021 & IA 4316/2021 in CS(COMM) 100/2021          Page **28** of 43

court does not exist or because of a *vis major* or force majeure and the like.

(5)     Where parties have agreed, under a non-exclusive jurisdiction clause, to approach a neutral foreign forum and be governed by the law applicable to it for the resolution of their disputes arising under the contract, ordinarily no anti-suit injunction will be granted in regard to proceedings in such a forum conveniens and favoured forum as it shall be presumed that the parties have thought over their convenience and all other relevant factors before submitting to the non-exclusive jurisdiction of the court of their choice which cannot be treated just as an alternative forum.

(6)     A party to the contract containing jurisdiction clause cannot normally be prevented from approaching the court of choice of the parties as it would amount to aiding breach of the contract; yet when one of the parties to the jurisdiction clause approaches the court of choice in which exclusive or non-exclusive jurisdiction is created, the proceedings in that court cannot *per se* be treated as vexatious or oppressive nor can the court be said to be forum non-conveniens.

(7)     The burden of establishing that the forum of choice is a forum non-conveniens or the proceedings therein are oppressive or vexatious would be on the party so contending to aver and prove the same."

42.     Of these, only principles (1) and (7) are of relevance, as the remaining principles deal with situations in which there is a contract between the parties which may, or may not, contain an exclusive jurisdiction clause.  The Court is, therefore, required to examine (i) whether declining of injunction would defeat the ends of justice and perpetuate injustice and (ii) whether the proceedings in the foreign court are oppressive or vexatious.

Validity unknown
Digitally Signed
By:SUNIL SINGH NEGI
Signing Date:25.05.2021
17:41:23

IA 3133/2021 & IA 4316/2021 in CS(COMM) 100/2021          Page 29 of 43

**43.**     Modi's appeal was, ultimately, rejected by the Supreme Court, relying on the jurisdiction clause contained in the agreement between Modi and WSG.

**44.**     Contrary to what Mr. Sibal has pleaded, this decision also clarifies, unequivocally, that the burden to establish that the proceedings in the foreign court are oppressive or vexatious is on the anti-suit injunction applicant.  The submission, to the contrary, of Mr. Sibal has, therefore, to be rejected.

**45.**     It has to be seen, therefore, whether the plaintiff, before me, has been able to make out a case that the Texas proceedings are oppressive or vexatious to the plaintiff in the proceedings before this Court.  It is only if the answer to this query is in the affirmative that the plaintiff can claim itself entitled to an injunction, restraining the defendants from proceeding with the Texas proceedings.   If the answer to the query is in the negative, then, even if the plaintiff is otherwise prejudiced by grant of the reliefs sought by the defendants before the Texas Court, this Court cannot come to the rescue of the plaintiff by exercising its anti-suit injunction jurisdiction.

**46.**     ***Dinesh Singh Thakur***[11] involved a matrimonial dispute.  The husband filed for divorce against the wife before the Family Court, Gurugram.  The wife filed for divorce against the husband before the Florida District Court.  The husband sought an anti-suit injunction against the wife continuing to prosecute the divorce petition before the

Validity unknown
Digitally Signed
By:SUNIL SINGH NEGI
Signing Date:25.05.2021
17:41:23

Florida Court.  In paras 12 and 13 of the report, the Supreme Court held thus:

> "**12.**   Anti-suit injunctions are meant to restrain a party to a suit/proceeding from instituting or prosecuting a case in another court, including a foreign court. Simply put, an anti-suit injunction is a judicial order restraining one party from prosecuting a case in another court outside its jurisdiction. The principles governing grant of injunction are common to that of granting anti-suit injunction. The cases of injunction are basically governed by the doctrine of equity.
>
> **13.**   It is a well-settled law that the courts in India have power to issue anti-suit injunction to a party over whom it has personal jurisdiction, in an appropriate case. *However, before passing the order of anti-suit injunction, courts should be very cautious and careful, and it should be granted sparingly and not as a matter of routine as such orders involve a court impinging on the jurisdiction of another court, which is not entertained very easily specially when it restrains the parties from instituting or continuing a case in a foreign court.*"
>
> (Emphasis supplied)

Holding that there was no material on the basis of which it could be held that the continuance of the divorce proceedings in the Florida Court would be oppressive, the Supreme Court declined the prayer for anti-suit injunction.

**47.**   Though these decisions elucidate the principles applicable to grant of anti-suit injunctions with more than sufficient clarity, *Magotteaux Industries[2]*, on which Mr. Kaul relies, is also a relevant decision, as it applies the anti-suit injunction principles, postulated in *Modi Entertainment Network[1]*, to a case of intellectual property infringement.  In that case, a suit had been filed in this Court, and a complaint in the US Court, for infringement of patents.  The Indian action was directed against alleged infringement of Indian patents,

Validity unknown
Digitally Signed
By:SUNIL SINGH NEGI
Signing Date:25.05.2021
17:41:23

whereas the US action was directed against alleged infringement of US patents.  Obviously, the two cases were filed by opposite parties. Refusing to grant anti-suit injunction as sought, the Division Bench of this Court held, in para 67 of the report, as under:

> "**67.**   Not only two causes appear to be different and ground of inconvenience to the respondent does not appear to be correct, it is also noticeable that since the patent law is territorial in nature, therefore, the infringement caused in different countries where the patents are registered and monopoly rights are granted, will lead to a separate cause of action and the mere fact that the appellants has(sic) brought one suit of civil nature before this Court for the violation of the patent rights in India will not lead to the conclusion that a party is debarred from filing any action restraining the misuse of the patent/monopoly rights, which are granted in the jurisdiction of some other court."

The reasoning preceding this decision, as reflected in para 53 of the report, is also relevant:

> "**53.** As we have seen earlier in the discussion that the question of anti-suit injunction has been discussed by Hon'ble Supreme Court in ***Modi's  case*** (*supra*) and subsequently followed by this Hon'ble Court in many decisions. Most of the decisions given by this Court as well as the Hon'ble Supreme Court in ***Modi's  case*** involves(sic) contractual dispute wherein the parties have agreed to submit themselves to the jurisdiction of one court or the other i.e. the foreign court. Such kind of situation is missing in the present case. In the absence of contractual dispute between the parties, we have to examine the present controversy by applying principles of ordinary civil law more specifically under the provisions of Section 10 of CPC in the principles of res subjudice. The explanation to Section 10 provides that the pendency of a suit in a foreign court does not preclude the courts in India from trying a suit founded on the same cause of action. Applying the said principle conversely would mean that the foreign court is not precluded from entertaining any suit on the basis of some cause of action merely because the suit is pending in Indian Court. In the case in hand pending in

Validity unknown

Digitally Signed
By:SUNIL SINGH NEGI
Signing Date:25.05.2021
17:41:23

this Court and the cause of action pertaining to the proceedings pending in the US Court is different. Even assuming the cause of action pertaining to both the proceedings are same then by applying the explanation of Section 10 of CPC, the said action is maintainable in the US Court and the grant of anti-suit injunction by the learned single judge is not appropriate in the present case."

48.   This judgement, once again, emphasises the point that the prejudice caused by the foreign proceedings, or any order that might be passed therein, had to be examined *vis-à-vis* the prosecution of the Indian proceedings, and not *vis-à-vis* the Indian anti-suit injunction applicant in general.  The Division Bench found that the pendency of the patent infringement proceedings initiated in the US did not, in any manner, inhibit, or even interfere with, the prosecution, in India, of the proceedings pending before this Court.  Consequently, it was held that the foreign proceedings could not be treated as "oppressive", as would justify injuncting the prosecution thereof.

Application of these principles to the facts of the present case

49.   The only issue to be addressed is, therefore, whether the continuance of the Texas proceedings, initiated by the defendants, is oppressive or vexatious to the present proceedings pending before me, initiated by the plaintiff, as would justify grant of anti-suit injunction, restraining the defendants from continuing to prosecute the Texas proceedings, in the interests of justice.

50.   The answer, in my considered opinion, has necessarily to be in the negative.



Validity unknown
Digitally Signed
By:SUNIL SINGH NEGI
Signing Date:25.05.2021
17:41:23

51.    A bare reading of the complaint filed before the Texas Court reveals that the defendants have, in the said proceedings, essentially sought an injunction, against the plaintiff reflecting the "76" mark – over which the defendants claim superior trademark rights in the US – on its www.unicalglobal.com webpage or social media pages, so as to be accessible to customers in the US.  Mr. Kaul, learned Senior Counsel appearing for the defendants has also reiterated this position, before this Court in the present proceedings.  Needless to say, the defendants would remain bound by this statement, both in this Court as well as before the Texas Court.  The reliance, by Mr. Sibal, on the legal notice dated 29th January, 2021, addressed by Defendant No. 2 to the plaintiff, does not alter the contents of the complaint filed before the Texas Court, or dilute the sanctity of the statement made by learned Senior Counsel for the defendants before this Court.  I am not inclined, therefore, to accord, to the legal notice dated 29th January, 2021, any more importance than it deserves.

52.    Mr. Sibal sought to contend that, the plaintiff having geo-blocked its website and all its accounts, except its LinkedIn account which, too, it was willing to geo-block, so as to render the said pages and accounts inaccessible within the US, the defendants should be called upon to make a statement, before this Court, that their grievance in that Texas complaint stands satisfied and that they would not be prosecuting the said proceedings any further.  Any hesitation or unwillingness, on the part of the defendants, to make such a statement, according to Mr. Sibal, would belie the defendants' stand that they are

Validity unknown
Digitally Signed
By:SUNIL SINGH NEGI
Signing Date:25.05.2021
17:41:23

only seeking that the plaintiff's webpage and social media accounts be not accessible to customers in the US.

53.    The discipline of anti-suit injunction proceedings does not allow this Court to follow any such procedure, or call upon the defendants to provide any such undertaking.

54.    Apart from his statement that the defendants were only concerned with the plaintiff's activities in the US, Mr. Kaul also clarified, on instructions, that, so long as the plaintiff's website and social media pages could not be accessed by persons in the US, his client's grievance would stand satisfied, as they were not concerned with the plaintiff's activities outside the US.  I cannot ask for more, from the defendants.  This Court, exercising its anti-suit injunction jurisdiction, cannot terminate the proceedings pending before the Texas Court, or dispose of the said proceedings.  Nor (though some decisions of foreign Courts have done so) can this Court, in exercise of its anti-suit injunction jurisdiction, mandate that the defendants withdraw the proceedings pending before the foreign Court.  The anti-suit injunction jurisdiction of this Court extends only to restraining the defendants from continuing to prosecute the proceedings pending in the foreign court, *if the continuance of the proceedings in the foreign Court is vexatious or oppressive to the present proceedings pending before this Court*.  In the present proceedings, the plaintiff seeks protection against infringement of its Indian trademarks.  I am unable to convince myself that similar protection, being sought by the defendants before the Texas Court in respect of the "76" mark, in respect of the usage in US whereof they claim exclusive rights, is

Validity unknown
Digitally Signed
By:SUNIL SINGH NEGI
Signing Date:25.05.2021
17:41:23

oppressive or vexatious, in any manner, to the continuance of the present proceedings. **_Magotteaux Industries_**[2] involved a similar issue, and a similar question arose, which this Court definitively answered in the negative.

55.   Trademark rights being territorial, the defendants are as entitled to protect their US trademarks, as is the plaintiff entitled to protect its Indian trade mark.  Mr. Sibal's argument that, the grievance of the defendants being essentially against the plaintiff's webpage, which was hosted from India, the defendants could have as well sued the plaintiff in India, is obviously unsound.  The claim for a restraint, against the plaintiff, from reflecting, on its webpage, the "76" mark, so as to be accessible to persons in the US, according to Mr. Kaul, is to ensure that customers in the US are not led into believing that, even within the US, the plaintiff has the right to use the "76" mark in respect of lubricants and other such goods.  The right which the defendants were seeking to assert in the Texas proceedings is, therefore, the defendants' right to the "76" mark in the US.  That right, quite obviously, could not have been asserted in any court except the courts in the US, intellectual property rights being territorial in nature.  Mr. Kaul is correct in his submission that the defendants could not have approached this Court, seeking protection against use, by the plaintiff, of the "76" mark in the US.  Where, therefore, the plaintiff is asserting the right to use the ⑦⑥, "UNOCAL", **UNOCAL ⑦⑥ LUBRICANTS** and ⑦⑥ marks in India, and the defendant is asserting the right to use


Validity unknown
Digitally Signed
By:SUNIL SINGH NEGI
Signing Date:25.05.2021
17:41:23

the "76" mark, in respect of lubricants, in the US, quite obviously, in each case, the *forum conveniens* has been approached.

56.    This Court cannot, in exercise of its anti-suit injunction jurisdiction, injunct the prosecution, by the defendants, in the Texas proceedings, of their allegedly exclusive rights to the "76" mark in the US.  Those proceedings could not have been filed before any Court outside the US, and certainly not before this Court.  Any order, injuncting the defendants from prosecuting the Texas proceedings, which could not have been prosecuted in any other forum would, in fact, *per se* be oppressive and vexatious of the Texas proceedings. Such an order could be justified only where the continuance of the Texas proceedings are oppressive to the continuance of the present proceedings before this Court, as initiated by the plaintiff.  I have already found that this is not so, and ***Magotteaux Industries²*** fortifies the finding.

57.    Mr. Sibal had sought to contend that the manner in which the internet worked was such that the plaintiff could not, in any manner, remove reference to the "76" mark from their webpage solely as respects access to the webpage in the US.  As such, he submits, if the defendant's prayer were to be granted, the plaintiff would have to remove reference to the "76" mark from their webpage globally. Customers in India, who sought to access the webpage, too, therefore, he submits, would not be able to see the "76" mark.  As a corollary, he reiterated that the only way in which the defendants' apprehensions

Validity unknown
Digitally Signed
By:SUNIL SINGH NEGI
Signing Date:25.05.2021
17:41:23

IA 3133/2021 & IA 4316/2021 in CS(COMM) 100/2021          Page 37 of 43

could be assuaged, was by geo-blocking the webpage from access within the US, which his client had already undertaken.

58.    On the correctness of this submission, there was some prevarication on the part of the defendants.  To my mind, the issue is tangential to the controversy at hand.  Even if, arguendo, it were to be assumed that the plaintiff could not, technologically, remove the "76" mark from their webpage only as accessible in the US, that difficulty, or even hardship, cannot justify grant of anti-suit injunction as sought. As I have already observed hereinbefore, anti-suit injunction is essentially to protect the proceedings initiated by the plaintiff before the court.  It is not intended to protect the plaintiff from all orders which a foreign Court may come to pass, or to tide over every difficulty which may result from grant of the relief, as sought in the proceedings in the foreign Court.

59.    It would always be open to the defendants to canvas, before the Texas Court, that, by geo-blocking their webpages from accessing the US, the defendants' grievance stands redressed.  Towards this end, the plaintiff may also legitimately rely on the defendants' statements made before this Court by Mr. Kaul.  The difficulty in selectively removing, from their webpages as accessible in the US, the "76" mark, could also be pleaded before the Texas Court.  This Court, in the exercise of its anti-suit injunction jurisdiction, cannot provide a shortcut to the plaintiff, to circumvent this requirement.  Pleas, which legitimately ought to be urged before the Texas Court, cannot be urged before this Court as grounds to seek anti-suit injunction against

Validity unknown
Digitally Signed
By:SUNIL SINGH NEGI
Signing Date:25.05.2021
17:41:23

continuation of those proceedings.  Once this Court finds that the defendants are restricting their claim, in the Texas Court, to the activities of the plaintiff in the US, the matter must end there.  The proceedings in the Texas Court cease, with this assurance by the defendants, to be in any manner oppressive or vexatious to the proceedings before this Court.

60.    This Court, in the present proceedings, is not concerned with the merits of the complaint before the Texas Court, or even whether the Texas Court has jurisdiction to entertain the complaint of Defendant No. 2.  Inasmuch as the defendants assert their rights to exclusive use of the "76" marks in the US, in respect of lubricants and other similar goods, it cannot be readily said that the invocation of the jurisdiction of the Texas Court was entirely frivolous or without substance. Beyond this, any jurisdictional objection that the plaintiff may have, to the proceedings before the Texas Court, would have to be urged before that Court, and not before me.

61.    In view of the above, I do not find it necessary to refer, in any detail, to the decision in *Swami Ramdev*[5], which Mr. Sibal essentially pressed on the issue of geo-blocking.   That apart, as Mr. Kaul correctly submits, the controversy in *Swami Ramdev*[5] dealt with the damage to reputation of the plaintiff in that case, which has global repercussions and ramifications and is not, unlike intellectual property rights, territorial in nature.

Validity unknown
Digitally Signed
By:SUNIL SINGH NEGI
Signing Date:25.05.2021
17:41:23

**62.**    To conclude, and at the cost of repetition, in the face of the statement, by learned Senior Counsel for the defendants, that (i) the Texas Court proceedings were directed only against the plaintiff's activities in the US, and that the defendants were not concerned, in the said proceedings, with the activities of the plaintiff outside the US, and (ii) insofar as the plaintiff's webpage and social media accounts were concerned, the defendants only prayed that, as accessible to customers in the US, the webpage and social media accounts should not reflect any right, of the plaintiff, to use the "76" marks in respect of lubricants, etc, it is not possible to hold that the continuance of the proceedings in the Texas Court is in any way oppressive or vexatious to the present proceedings pending before me.  Even if the prayers in the Texas proceedings were finally to be granted, that would not impact, directly or indirectly, the proceedings before me, in which the plaintiff asserts its right to exclusive use of the , "UNOCAL"  and  marks in India.

**63.**    If the grant of the reliefs sought in the Texas proceedings would result in any difficulty to the plaintiff, in operating its webpage or social media accounts, that would be an issue to be urged before the Texas Court, before which the said relief has been claimed by the defendants.  Equally, the plea that geo-blocking of the websites, so as to render them inaccessible in the US, would suffice to satisfy the grievance of the defendants in the Texas proceedings, would also remain open to be urged by the plaintiff in those proceedings.  These pleas cannot, however, constitute legitimate grounds to grant anti-suit

Validity unknown
Digitally Signed
By:SUNIL SINGH NEGI
Signing Date:24.05.2021
17:41:23

injunction, restraining the defendants from continuing to prosecute the proceedings in the Texas Court.

64.     Mr Sibal placed reliance on orders passed by coordinate Single Benches of this Court in *H.T. Media³* and *(India TV) Independent News Service⁴*.  *H.T. Media³* was an *ad interim* order passed at the *ex parte* stage, while issuing notice on the application under Order XXXIX of the CPC, without hearing the defendant.  It would be folly, therefore, to rely on the decision at the stage when an Order XXXIX application is being finally decided.   Besides, the domain name forming subject matter of consideration in that case was www.hindustan.com, which was found to be entirely targeted to the Indian public.  The registration of a similar domain name by the defendants was, therefore, found to be *mala fide.*  No such inference can be drawn in the present case; indeed, no such plea is raised by the plaintiff either.  *India TV⁴*, for its part, did not even deal with rival challenges against trademark infringement.   The suit, before the Arizona Court, in that case, by the defendant, sought a declaration of non-infringement, by Defendant No. 1, of the plaintiff's mark.  No case of rival infringement claims existed in that case, and this Court was found, in the circumstances, to be the *forum conveniens* for both litigations.

65.     Neither of these decisions, therefore, helps the plaintiff.

66.     I may, in conclusion, refer to a recent decision of mine, in which similar issues arose, in *Interdigital Technology Corporation v*


Validity unknown
Digitally Signed
By:SUNIL SINGH NEGI
Signing Date:25.05.2021
17:41:23

***Xiaomi Corporation***[12].  The plaintiff, in that case ("InterDigital",
hereinafter), has sued the defendants ("Xiaomi", hereinafter)for
infringing Standard Essential telecommunication Patents ("SEPs")
held by the plaintiff in India.  An application, under Order XXXIX of
the CPC, has also been moved, seeking a restraint against Xiaomi
from continuing to infringe InterDigital's SEPs, or, in the alternative,
to obtain a licence from InterDigital for use of the SEPs by paying
royalty at Fair, Reasonable and Non-Discriminatory (FRAND) rates.
Shortly prior to InterDigital moving this Court, Xiaomi had filed a
royalty rate-setting complaint before the Wuhan Intermediate People's
Court ("the Wuhan Court", in short), for fixing FRAND royalty rates
for the entire SEP portfolio of InterDigital.  After InterDigital had
filed its suit before this Court, Xiaomi filed an anti-suit injunction
application before the Wuhan Court, wherein, by order dated 23rd
September, 2020, the Wuhan Court restrained InterDigital from
continuing to prosecute its interlocutory injunction application before
this Court, on pain of costs of RMB 1 million (equivalent to ₹ 1 crore)
per day.  An anti-execution injunction application was preferred by
InterDigital, before this Court, for restraining Xiaomi from executing
the anti-suit injunction order passed by the Wuhan Court. *Vide* my
judgement dated 3rd May, 2021, I granted the prayer, holding that, the
continuance of the injunction proceedings initiated by InterDigital in
this Court not being oppressive or vexatious, in any manner, to the
Wuhan proceedings, the Wuhan Court was not justified in injuncting
InterDigital from seeking protection against infringement of their
Indian patents before the Indian Court, being the only Court which

---

[12] **MANU/DE/0839/2021**


Validity unknown

Digitally Signed
By:SUNIL SINGH NEGI
Signing Date:25.05.2021
17:41:23

InterDigital could approach.  *Mutatis mutandis*, this principle applies in the present case as well.   The Texas proceedings not being oppressive or vexatious to the present proceedings being prosecuted by the plaintiff before this Court, this Court would not be justified in restraining the defendants from seeking protection against infringement (as they perceive) of the "76" mark, over which they claim exclusive rights in the US, before the US Court, which alone could rule thereon.

**Conclusion**

**67.**    Resultantly, the prayer for vacation of the anti-suit injunction granted by this Court on 8th March, 2021 succeeds and is allowed. The anti-suit injunction accordingly stands vacated.

**68.**    Leaving other issues raised in the IAs open to be argued and decided separately, IA 3133/2021 stands dismissed, and IA 4316/2021 stands allowed, to the above extent.

**C. HARI SHANKAR, J.**

**MAY 25, 2021**

Validity unknown
Digitally Signed
By:SUNIL SINGH NEGI
Signing Date:25.05.2021
17:41:23

IA 3133/2021 & IA 4316/2021 in CS(COMM) 100/2021                    Page **43** of 43